United States District Court
Eastern District of New York                               1:18-cv-06009

| |
|---|
| Barbara Evans individually and on behalf of all others similarly situated |
| Plaintiff |
| - against - |
| Small Planet Foods, Inc. |
| Defendant |

Complaint

    Plaintiffs by attorneys allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

    1.    Small Planet Foods, Inc. ("defendant") manufactures, distributes, markets, labels and sells food bars under the LÄRABAR brand.

    2.    The relevant product lines[1] are the "Original Fruit & Nut Bar" Products that contain dates – at least 19 of the 24 varieties.

    3.    The Products are sold to consumers by third parties from stores and online.

    4.    The Products' common principal display panel representations include (i) the brand name, (ii) "The Original Fruit & Nut Bar," name, (iii) color corresponding to the specific variety, (iv) variety name (i.e., apple pie) and (v) "Just *n* Ingredients."



---

[1] Subject to any amendment of the complaint.

5. The back of the packages state "We at Larabar believe that a sound mind, body and spirit are derived from food in its simplest, most natural state. Made from 100% real food, Larabar is a magical harmony of fruits, nuts and spices that will lift your vitality and provide energy with every bite. Simple. Pure. Delicious. Enjoy the energy! -Lara Creator of Larabar"

> We at LÄRABAR® believe that a sound mind, body and spirit are derived from food in its simplest, most natural state. Made from 100% real food, LÄRABAR® is a magical harmony of fruits, nuts and spices that will lift your vitality and provide energy with every bite. Simple. Pure. Delicious.®
>
> Enjoy the energy! *Lara* Creator of LÄRABAR®

6. The back of the package also contains the ingredients list and nutrition facts.

**INGREDIENTS:** DATES, **ALMONDS**, UNSWEETENED APPLES, **WALNUTS**, RAISINS, CINNAMON.

**Nutrition Facts**
16 servings per container
Serving size 1 bar (45g)

**Calories** 200 per serving

| Amount per serving | | % Daily Value* |
|---|---|---|
| **Total Fat** 9g | | 12% |
| Saturated Fat 1g | | 4% |
| Trans Fat 0g | | |
| Polyunsaturated Fat 4g | | |
| Monounsaturated Fat 4g | | |
| **Cholesterol** 0mg | | 0% |
| **Sodium** 10mg | | 0% |
| **Total Carbohydrate** 25g | | 9% |
| Dietary Fiber 4g | | 15% |
| Total Sugars 18g | | |
| Includes 0g Added Sugars | | 0% |
| **Protein** 4g | | |

Vitamin D 0mcg 0% • Calcium 50mg 2% • Iron 0.9mg 4% • Potassium 300mg 6%

* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

7. Of the 24 varieties of fruit and nut bars, 19 have "dates" listed as the first ingredient.

8. 11 of the 19 also have small amounts of fruits such as cherries, raisins or lemon juice.

9. Almost 60% of consumers believe that the fewer ingredients a product has, the

2

healthier it is – its contribution towards well-being, stable weight, etc.[2]

10. In reaction to consumers seeking foods without artificial ingredients, sugar in its myriad forms and preservatives, manufacturers have attempted to make products with as few ingredients as possible.





11. Defendant's marketing is built around the promotion of "real" ingredients and alludes to other companies that use unfavorable or less desirable ingredients, through attempts at transparency – i.e., "*We* believe in simplicity" (emphasis added), the reference being to other companies which believe in confusion.

---

[2]https://www.nutraceuticalsworld.com/issues/2015-10/view_breaking-news/majority-of-us-consumers-believe-fewer-ingredients-means-healthier-products



12. The Products falsely convey they are made from start to finish from whole food ingredients – "Food Made From Food," images of the ingredients in their unprocessed form, etc.

13. The Products' ingredient lists reinforce this message, because they all use collective names to refer to their components.[3]

14. The message is that the Products are made by taking whole intact components and converting them under one roof into the ingredients that constitute the Products.

15. This is misleading since when a collective name is used, consumers are unable to distinguish the value, quality and nature of the actual ingredients used.

16. For example, tomatoes are used in food in numerous forms and the word "tomato" precedes/follows paste, puree, jam, sauce, powder, diced, etc.

---

[3] All the Products use the same ingredient formatting and name, so apple pie is used as an example.

4

17. The ingredient list of tomato sauce declares "Tomato Puree (Water, Tomato Paste), Diced Tomatoes," as opposed to the solitary word "tomatoes."

18. This is because (1) tomato puree is a different product from tomato sauce, (2) differences in the functional, sensory, textural, organoleptic, nutrient and other properties between specific forms of an ingredient (i.e., tomato paste) and the collective name ("tomato"), (3) declaring only "Tomatoes" would lead a reasonable consumer to expect that the product is less processed, fresher, healthier and more valuable and (4) water is added.

19. The use of generic, collective names for ingredients is relevant and material as consumers associate products made from whole, unprocessed (prior to being incorporated into a product) ingredients as being more natural, better quality, containing more vitamins and other nutrients, healthier, etc.

20. Through listing in the collective forms, consumers will not expect that the ingredients were sitting on a warehouse shelf in a processed form, through the use of preservatives, until they were needed for the products.

21. Research has shown that consumers will pay more for a product with a shorter ingredient list – fewer ingredients and without the specific form appended to the ingredient source (i.e., tomato instead of tomato powder).

22. It is misleading and deceptive to declare the Products' ingredients include "Dates."

23. though dates are grown in California and Arizona, domestic dates are limited in number relative to the global market and are consumed fresh.

24. The largest producers of dates and date products are in the Middle East, North Africa and South Asia, who export them to other countries including the U.S.

25. Date processing occurs near harvesting, due to familiarity with the crop, minimal

5

deterioration between harvest and processing, and it is more cost-effective to transport a product which has already been processed.

26. To convert dates to date paste, dates are steamed, seeded and macerated and packed into containers.

27. Storage of date paste brings challenges like hardening, microbial spoilage, darkening in color and limited shelf-life of c. 30 days.

28. To counter these problems, a small amount of citric or ascorbic acid is incorporated into the date paste to maintain a desirable color, prevent hardening, extend shelf-life and retard spoilage.

29. Without the preservative effect of citric acid, date paste would be of no use to manufacturers across the world who receive the product, since the time from processing in the date factory to use as an intermediate product exceeds thirty days after shipping, customs, etc.

30. The citric and/or ascorbic acid used in making date paste are not exempt from being declared in the ingredient list.

31. This is because they have a technical and functional effect – maintaining the color and organoleptic properties, ensuring the product can be kept and used.

32. The citric acid is not an incidental additive, because it is not removed from the Products and continues to have a preservative effect in the finished food – the Products.

33. The citric acid is not a processing aid because though it prevents hardening of the product, this function relates to its suitability for *further use*, as opposed to facilitating the manufacture of the date paste itself.

34. By not declaring the citric or ascorbic acid which is necessary to manufacture the date paste, the labels are misleading since they are omitting an ingredient which consumers would

6

find less favorable than those promoted in their marketing.

35. At a minimum, every product which says *N* ingredients would need to say *N+1* and that one additional ingredient would be enough for some consumers to not buy the Products.

36. The Products are also misleading because they emphasize the "fruit" component.

37. Since Atwater and Mccollum, the federal government has promoted consumption of fruits and vegetables.

38. Though there have been many reasons for emphasizing them, current guidelines and consensus value fruits and vegetables because are generally low in energy density and provide a variety of nutrients.

39. When consumed in their whole, fresh, form, they have a more satiating effect because they contain fiber and water, as opposed to being dried, where almost all of the water is removed.

40. These beneficial effects are attributable to certain nutrients like vitamin C (significant in citrus and tropical fruits) and associated with healthy and recommended dietary patterns.

41. Public health bodies do not distinguish between specific fruits or vegetables, since this would be a burdensome and endless task given all types of fruits and vegetables in existence.

42. Consumer research has shown that consumers will pay more for a product which is or claims to contain fruit.

43. Date fruits has one of the highest sugar concentration amongst all fruits at c. 80% (78% carbohydrates) and lowest water content – 20% - in their non-dried form.

44. For perspective on how these amounts are extreme outliers when compared to most fruits consumers are familiar with, apples are are 10% sugar while banana is considered a fruit with low water content – at 74%.

45. The low water and high sugar content are suited to the desert conditions in which the fruit thrives.

46. Additionally, dates harvested for further processing are selected at their maximum stage maturity where sugar concentration is highest and nutrients are lowest.

47. While dates contain low amounts of fiber and protein, these are concentrated in the seeds (pits), which are considered a by-product of date processing and only end up in date paste unintentionally if at all.

48. The high sugar content of dates is the reason they have been valuable to the confectionery industry.

49. Before the development of sugar cane production in the 18th centuries, sweets were based on dates, nuts and honey and referred to as "sweetmeats," a term still in use today.

50. Customs bureaus in this country and elsewhere classify products composed of the ingredients in these Products – date paste, nuts – as confections, not containing white chocolate, as opposed to under the distinct categories for fruit or nut products.

51. This is because their essential nature is a confection – its primary attribute is providing sweetness, above any "functional," nutritional or health element the nuts may contribute.

52. The emphasis on dates in the Products while promoting the bars as a "fruit and nut bar" is the equivalent of classifying ketchup as a vegetable[4] (as opposed to claiming that ketchup *contains* vegetables) – it is misleading and deceptive to consumers.

53. The claim that the Products are the equivalent of ½ cup of fruit is misleading because the primary "fruit" component – dates – is not in a recognizable form.

54. A half cup of fruit means the product purports to contain ¼ cup dried fruit.

---

[4] Ketchup was never "classified" as a vegetable per se but it was considered a vegetable serving for crediting purposes in school lunches.

8

55. Processed vegetables or fruits may contribute to certain meal pattern requirements if it provides an adequate amount – 1/8 cup – of recognizable ingredients.

56. Here, the product contains ¼ cup of dried fruit (2/8).

57. The question becomes whether the non-date ingredients are present in an amount equivalent to 1/8 cup, not withstanding the raisins are not recognizable since they are blended in.

58. Because the total fruit equivalent is 2/8, the unsweetened apples and raisins would need to be half of that – 1/8.

59. Based on the composition of the product, the apples and raisin are probable to be less than 1/8, making it false and misleading to claim the product is the equivalent of a half cup of fruit (1/4 dried fruit).

60. The high amounts of sugar, masked by the term, "fruit", result in a product whose regular consumption is likely to contribute to excess sugar consumption and, thereby, increased risk for and contraction of chronic disease.

61. In marketing the Products with implied and non-implied nutrient, health and wellness claims, defendant regularly and intentionally omits material information regarding the amount and dangers of the sugar content in its products provided by the fruit source.

62. Defendant is under a duty to disclose this information to consumers because (a) it is revealing some information about its products—enough to suggest they are healthy—without revealing additional material information, (b) deceptive omissions concern human health, and specifically the detrimental consequences of consuming its products, (c) defendant was, and is, in a superior position to know of the dangers presented by the sugars in its products as it is a global food company whose business depends upon food science and policy and (d) defendant actively concealed material facts not known to plaintiff and the class.

63. In marketing the Products, defendant affirmatively uses certain words and phrases to falsely suggest their sugar content is low and the nutrients expected by consumers based on the representations to be present in high amounts, are present in low amounts.

64. For example, defendant's statement that the apple pie product is "not too sweet," "spiced by cinnamon" and has a "nutty finish" all draw attention from the high sugar composition, suggesting the product is lower in sugar than it is and has nutritious and health qualities it lacks.

65. Plaintiff desired to purchase a product that consisted of fruits more consistent with the availability of all other fruits grown for consumption, instead of the one fruit which is an outlier in most important respects and shares few qualities with those fruits reasonable consumers are familiar with.

66. Excluding tax, the Products cost no less than $2.99 per Product (45 g), a premium price compared to similar products.

## Jurisdiction and Venue

67. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

68. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

69. This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

70. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

71. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Class Allegations

72. The classes consist of all consumers in the following states: <u>all</u>, <u>New York</u> who purchased any Products with actionable representations during the statutes of limitation.

73. A class action is superior to other methods for fair and efficient adjudication.

74. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

75. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

76. Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

77. Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

78. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

79. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

80. Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

81. Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

Parties

82. Plaintiff is a citizen of Kings County, New York.

83. Defendant is a Washington corporation with its principal place of business in Minneapolis, Minnesota.

84. In 2017 and/or 2018, plaintiff purchased one or more of the Products for personal

consumption, for no less than $2.99 per product, excluding tax, within this district and/or State.

85. Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

New York General Business Law ("GBL") §§ 349 & 350

86. Plaintiffs incorporates by references all preceding paragraphs.

87. Defendant's representations are false, unfair, deceptive and misleading

88. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

89. Plaintiff desired to purchase products which were as described by defendant.

90. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

Negligent Misrepresentation

91. Plaintiff incorporates by references all preceding paragraphs.

92. Defendant misrepresented the composition of the Products.

93. Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

94. This duty is based, in part, on defendant's position as a global concern.

95. Defendant negligently misrepresented and/or negligently omitted material facts.

96. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

97. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

Breach of Express Warranty and Implied Warranty of Merchantability

98. Plaintiff incorporates by references all preceding paragraphs.

99. Defendant manufactures and sells products which contain almonds.

100. Defendant warranted to plaintiff and class members that the Products were composed predominantly of fruit ingredients which had more in common with every other fruit *other* than the fruit used here, when this was not truthful and was misleading.

101. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

102. Plaintiff and class members relied on defendant's claims, paying more than they would have.

## Fraud

103. Plaintiff incorporates by references all preceding paragraphs.

104. Defendant's purpose was to mislead consumers who seek foods that are healthy, high in nutrients and less processed.

105. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

## Unjust Enrichment

106. Plaintiff incorporates by references all preceding paragraphs.

107. Defendant obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant(s) to correct such practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated: October 26, 2018

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
891 Northern Blvd., Suite 201
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

Levin-Epstein & Associates, P.C.
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
(212) 792-0046
joshua@levinepstein.com

Paskowitz Law Firm, P.C.
Larry Paskowitz
208 East 51st Street, Suite 380
New York, NY 10022
(212) 685-0969
lpaskowitz@pasklaw.com

1:18-cv-06009
United States District Court
Eastern District of New York

Barbara Evans individually and on behalf of all others similarly situated

Plaintiffs

- against -

Small Planet Foods, Inc.

Defendant(s)

## Complaint

Sheehan & Associates, P.C.
891 Northern Blvd., #201
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: October 26, 2018

/s/ Spencer Sheehan<br>Spencer Sheehan